UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHONE SMITH,<br><br>    Plaintiff,<br><br>   v.<br><br>SERGENT,<br><br>    Defendant. | No. 2:15-cv-0979 GEB DB P<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendant used excessive force when she handcuffed him. Before the court is defendant's motion for summary judgment. For the reasons set forth below, the undersigned recommends the motion be denied.

## BACKGROUND

**I.    Allegations in the Complaint**

    In his complaint, filed here on May 6, 2015, plaintiff alleges the following. (ECF No. 1.) On April 24, 2015, at 9:45 a.m., defendant handcuffed plaintiff in the library. Plaintiff asked defendant if she was "going to be safe in those handcuffs before she escorted him back to his cell." Defendant replied, "whatever and go fuck off." Plaintiff then told defendant that he could not feel his hands and was in "serious pain." He asked for removal of the handcuffs. Defendant declined. Plaintiff repeated that the handcuffs were stopping the blood flow to his hands and his

pain was serious. Defendant told plaintiff, "we shall fuck you up" and that plaintiff's serious pain was "not my problem." Plaintiff states he told defendant three times that he could not feel his hands.

Plaintiff told defendant that he needed to see a doctor about his hands. Defendant responded, "Fuck your hands." She also told him the "Green" have the "Power."

Plaintiff provides a copy of a Medical Report of Injury dated the same day at 10:30 a.m. (Id. at 6.) The report noted abrasions or scratches on plaintiff's right wrist and that plaintiff reported pain.

## II. Procedural Background

On screening, the court found plaintiff's complaint stated a potentially cognizable claim against defendant for excessive force in violation of the Eighth Amendment. (Oct. 21, 2015 Order (ECF No. 12).) On February 8, 2016, defendant moved to have plaintiff declared a vexatious litigant and be ordered to post security to proceed with this case. (ECF No. 20.) On September 23, 2016, the court denied the motion. (ECF No. 28.)

Defendant filed an answer on October 14, 2016 (ECF No. 30) and the pending motion for summary judgment on June 15, 2017 (ECF No. 43.) Plaintiff filed an opposition. (ECF No. 45.) Defendant filed a reply. (ECF No. 46.)

## MOTION FOR SUMMARY JUDGMENT

Defendant contends there are no genuine issues of material fact. According to defendant, even if plaintiff can prove all of his factual allegations, it does not establish a claim for excessive force. Plaintiff filed a short opposition in which he points to factual disputes.

## I. Legal Standards

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
////

for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Other Applicable Legal Standards

#### 1. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983,

if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

### 2. Excessive Force under the Eighth Amendment

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). For claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10).

When determining whether the force was excessive, courts look to the "extent of the injury . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7.

While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of

5

decency always are violated." Id. at 9 (citing Whitley v. Albers, 475 U.S. 312, 327 (1986)). An inmate complaining of "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim," but "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. 34, 38 (2010) (per curiam).

### 3. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

### II. Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 43-3.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff filed just a three-
////

page brief and a copy of his deposition transcript in opposition to defendant's motion.  (ECF No. 45.)

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendant's DSUF.

### A. Undisputed Material Facts

At all relevant times, plaintiff was incarcerated at Mule Creek State Prison and housed in the Administrative Segregation Unit.  (DSUF (ECF No. 43-3) No. 1, 2, 4.)  On April 24, 2015, defendant and Officer Winkfield came to the prison law library to escort plaintiff back to his cell.  (DSUF No. 5, 6.)  While plaintiff was in a holding cage in the library, defendant placed handcuffs on both of plaintiff's wrists.  (Transcr. of Jan. 11, 2017 Depo. of D. Smith ("Smith Depo."), lodged herein on June 15, 2017, at 18; DSUF No. 5.)  While in the holding cell, plaintiff complained that the handcuffs were too tight.  (DSUF No. 6.)

Defendant removed plaintiff from the holding cell and walked plaintiff out of the library to his housing cell.  (DSUF No. 9.)

At some point during the escort, plaintiff asked defendant to loosen the handcuffs.  (DSUF No. 9.)  Defendant did not loosen or adjust plaintiff's handcuffs during the escort.  (Id.) Institutional protocol required that inmates housed in the Administrative Segregation Unit be in restraints whenever they are outside their cell.  (June 9, 2017 Decl. of E. Pedersen (ECF No. 43-6), ¶ 5.)  Once an escort has begun, institutional protocol requires an Administrative Segregation inmate to remain in handcuffs at all times.  (Id. ¶ 8.)

The distance from the law library to the housing unit where plaintiff's cell is located is an estimated thirty feet.  The escort would have taken seconds, and at most, one minute. (Smith Depo. at 26 (the escort took "about two seconds;" DSUF No. 10.)  Once the escort was complete, plaintiff was placed back in his cell and defendant removed his handcuffs.  (DSUF No. 11.) Plaintiff had the handcuffs on his wrists for a total of about two minutes.  (Id.)

Plaintiff requested a medical evaluation immediately after being returned to his cell.  (Smith Depo. at 20.)  Plaintiff testified in his deposition that it took somewhere between ten and thirty minutes before he was taken for a medical evaluation.   (Id. at 20, 34.)  The medical report from

that evaluation shows plaintiff was seen at 10:30 a.m. on April 24, 2015. (Ex. to Compl. (ECF No. 1 at 6).) Plaintiff was sent back to his cell with an ice pack. (Smith Depo. at 41, 52.)

### B. Disputed Material Facts

#### 1. Did Defendant Check the Handcuffs?

Defendant contends that she and Officer Winkfield checked the handcuffs. (June 9, 2017 Decl. of S. Sergent ("Sergent Decl.") (ECF No. 43-4), ¶ 4; June 9, 2017 Decl. of M. Winkfield ("Winkfield Decl.") (ECF No. 43-5), ¶ 4.) The officers determined that the handcuffs were loose around plaintiff's wrists, that plaintiff's skin was not being pinched by the cuffs, that there was no discoloration in plaintiff's hands, and that the handcuffs did not need to be adjusted. (Id.) Defendant states that she was able to place her index finger between the cuff and plaintiff's wrist, thus confirming that the handcuffs were not tight. (Id.)

Plaintiff contends that neither defendant nor Winkfield checked the tightness of the handcuffs at any time. (Smith Depo. at 65; Plaintiff's Oppo. (ECF No. 45) at 2.) Plaintiff states that he heard Winkfield tell defendant that the handcuffs were "stopping the blood circulation." (Smith Depo. at 29.)

#### 2. Were Plaintiff's Wrists Swollen and Discolored when the Handcuffs were Removed?

Plaintiff contends that after the handcuffs were removed one wrist was swollen, his hands were numb, and both wrists were a "blackish, bluish color." (Smith Depo. at 17, 47-48.) He states that he showed defendant the swelling and discoloration of his wrists when she took the handcuffs off. (Id. at 27-28.) The following morning, the numbness and swelling were gone. (Id. at 49-50.)

Defendant states that she did not see any marks, bruises, or injuries on plaintiff's wrist nor did plaintiff notify her of any injuries. (Sergent Decl. (ECF No. 43-4), ¶ 8.) Officer Winkfield also states that he never witnessed any swelling or injuries of any kind on plaintiff's wrists. (Winkfield Decl. (ECF No. 43-5), ¶ 7.)

////

The medical report prepared at plaintiff's visit shows that there were abrasions on one wrist and that plaintiff complained of pain. (Ex. to Compl. (ECF No. 1 at 6).) No bleeding, bruising, swelling, or redness was noted on the report. In a note to plaintiff's medical file dated April 24, 2015 at 10:30 a.m., Dr. Bal wrote that plaintiff stated he had been handcuffed too tightly, causing his skin to bleed. (Ex. A to June 12, 2017 Decl. of I. Bal, M.D. (ECF No. 43-7 at 5).) Dr. Bal wrote that plaintiff sustained two "light superficial" scratches, one was "about 2 inches long and the other [was] about an inch long with no active bleeding." Dr. Bal also wrote that he or she saw no swelling of the wrists.

### 3. Did Plaintiff cut his Wrists that Day?

Defendant states that "[l]ater that same day," she and other officers witnessed plaintiff cutting himself and making marks on his wrists, which he stopped when the officers approached him about it. (Sergent Decl., ¶ 9.) Defendant does not identify with any more specificity the time that this occurred. Plaintiff denies that he cut himself that day. (Plaintiff's Oppo. (ECF No. 45) at 2.)

### 4. Did Plaintiff Suffer an Ongoing Injury?

Defendant contends that plaintiff did not suffer any permanent or serious injury, if any injury at all, as a result of the brief escort by defendant. (See Bal Decl. (ECF No. 43-7), ¶ 3.) At the time of his deposition in January 2017, plaintiff stated that he continued to have numbness and tingling in his hands. (Smith Depo. at 57.)

### III. Analysis of Eighth Amendment Claim

Defendant makes the following arguments: (1) plaintiff presents no admissible evidence to establish that he suffered injury as a result of any actions by defendant; and (2) even assuming defendant failed to examine whether the handcuffs were too tight, plaintiff fails to show an Eighth Amendment violation under a balancing test.

Defendant cites one case in which the Ninth Circuit held that "conclusory allegations" of injury from handcuffing which are "unsupported by factual data are insufficient to defeat" a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). In Arpin, the

plaintiff alleged that she suffered injury as a result of being handcuffed by an officer. The Ninth Circuit held that the plaintiff's failure to provide medical records or other evidence to support her claim of injury was insufficient to support a claim that the force used was unreasonable and excessive. Id. (citing Foster v. Metropolitan Airports Com'n, 914 F.2d 1076, 1082 (8th Cir. 1990)). Similarly, in Foster, the Eighth Circuit rejected a plaintiff's claim that tight handcuffs caused injury when that claim was unsupported by evidence. The court found that the plaintiff's attempt to resist arrest made the use of some force necessary. The fact plaintiff was unable to provide evidence of injury was an important factor in defeating his claim that the force used was excessive. 914 F.2d at 1082-83.

The Eighth Circuit used the reasoning of Foster to hold that an allegation that the application of handcuffs amounts to excessive force must be supported by something beyond allegations of minor injuries. Crumley v. City of St. Paul, Minn., 324 F.3d 1003, 1008 (8th Cir. 2003); see also Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002) ( "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."); Nolin v. Isbell, 207 F.3d 1253, 1257–58 (11th Cir. 2000) (holding as a matter of law the amount of force used during an arrest to handcuff a suspect was not excessive and would not defeat an officer's qualified immunity where the resulting injury was merely bruising); cf. Martin v. Gentile, 849 F.2d 863, 869–70 (4th Cir. 1988) (concluding, as matter of law, painful handcuffing of one resisting arrest that resulted in scrapes and bruises was not a constitutional violation).

However, in a recent, unpublished Ninth Circuit decision, the court held that a plaintiff need not support a claim of excessive force due to tight handcuffs with proof of visible physical injury. An allegation that the handcuffs caused "unnecessary pain," is sufficient.[1] See Thompson v. Lake, 607 F. App'x 624, 625-26 (9th Cir. 2015) (citing Meredith v. Erath, 342 F.3d 1057, 1060,

---

[1] Thompson examined the question of excessive force under the Fourth Amendment's right to be free from an unreasonable seizure. Courts have applied Fourth Amendment excessive force standards in Eighth Amendment excessive force cases. See Candler v. Mallot, No. 2:14-cv-0363 GEB KJN P, 2015 WL 2235674, at *8 (E.D. Cal. May 12, 2015), rep. and reco. adopted, 2015 WL 3795667 (E.D. Cal. June 17, 2015); Buckley v. Evans, No. 2:02-cv-1451-JKS, 2007 WL 2900173, at * (E.D. Cal. Sept. 28, 2007) (noting similarity between analyses of Fourth and Eighth Amendment claims for excessive force in use of handcuffs).

1062-63 (9th Cir. 2003); LaLonde v. County of Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000)). In LaLonde, the Ninth Circuit held that a plaintiff's allegations that officers tightly handcuffed him and refused to loosen the handcuffs when he complained, was sufficient to defeat summary judgment for the defendant. 204 F.3d at 960.

At least one court in this circuit has noted that the decisions in Arpin and Thompson appear to conflict. In Arpin, the Ninth Circuit required medical or other evidence of injury beyond the plaintiff's own claims. 261 F.3d at 922. In Thompson, the Ninth Circuit held that a plaintiff's claims of unnecessary pain were enough. 607 F. App'x at 625. The court in Chambers v. Steiger, No. C14-1678-JCC-MAT, 2015 WL 9872531, at *8 (W.D. Wash. Oct. 29, 2015), rep. and reco. adopted, 2016 WL 235764 (W.D. Wash. Jan. 20, 2016), and found Arpin controlling and declined to follow the unpublished decision in Thompson.

It appears that most courts in this circuit have held that a plaintiff attempting to prove excessive force must show either a demonstrable injury or that he complained about the handcuffs being too tight and was ignored. See Candler, 2015 WL 2235674, at *8 (citing Dillman v. Tuolumne County, No. 1:13-CV-0404 LJO SKO, 2013 WL 1907379, at *8 (E.D. Cal. 2013)); Weldon v. Conlee, No. 1:13-cv-0540-LJO-SAB, 2015 WL 1811882, at *14 (E.D. Cal. Apr. 21, 2015), aff'd, 684 F. App'x 612 (9th Cir. 2017); Gause v. Mullen, No. CV 12-1439-PHX-RCB(MEA), 2013 WL 5163245, at *9 (D. Ariz. Sept. 12, 2013); Nguyen v. San Diego Police Dept., No. 11cv2594-WQH-NLS, 2013 WL 12114518, at *9 (S.D. Cal. Aug. 15, 2013); Bashkin v. San Diego County, No. 08cv1450-WQH-WVG, 2010 WL 2010853, at *7 (S.D. Cal. May 20, 2010); cf. LaLonde, 204 F.3d at 952; Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir. 1993).

This court will apply the standard, used fairly consistently by both this court and others, requiring either a showing of physical injury or an ignored complaint made to officers about the tight handcuffs. This standard is not in conflict with the Ninth Circuit's holding in Arpin. Rather, it takes the proof of injury standard of Arpin and combines it with the ignored complaints standard of LaLonde. Further, in Arpin, while the court relied on the absence of proof of injury, there was no indication the plaintiff had complained about the tightness of the handcuffs. In this

////

case, the parties' dispute about whether defendant responded to plaintiff's pleas creates an issue of material fact.

Defendant states that summary judgment for defendant was granted by this court on similar facts in Reviere v. Phillips, No. 1:11-cv-0483-AWI-DLB (PC), 2014 WL 711002 (E.D. Cal. Feb. 21, 2014). However, the facts underlying Reviere are distinguishable in two important respects. In that case, the prisoner did not inform officers that he was experiencing pain from the handcuffs until the escort was underway. 2014 WL 711002, at *3. In addition, the prisoner never sought medical attention for any injuries related to the use of the handcuffs. Id.

In the present case, plaintiff both complained about the tightness of the handcuffs immediately after they were applied and sought medical attention immediately after the handcuffs were removed. The court in Reviere also examined numerous cases in which tight handcuffing was found to constitute excessive force. The court noted those cases generally had one of the following factual situations: "the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant." Id. at *6 & n. 2 (citing Shaw v. City of Redondo Beach, No. CV 05-0481 SVW (FMOx), 2005 WL 6117549, at * 7 (C.D. Cal. Aug. 23, 2005) and collecting cases). Materials issues of fact remain in the present case on the issues of plaintiff's pain and whether defendant responded to his requests to loosen the handcuffs.

Defendant's reliance on the dismissal of the plaintiff's claims in Sands v. CDCR, No. 1:15-cv-1140 RRB, 2015 WL 5916804, at *3 (E.D. Cal. Oct. 8, 2015), aff'd 683 F. App'x 559 (9th Cir. 2017), is unavailing. In Sands, the plaintiff alleged only that he was flex-cuffed for an extended period of time, during which he was forced to urinate with his hands behind his back, and staff refused to free or loosen his handcuffs. The plaintiff was unable to identify the correctional officers involved. The court declined to permit plaintiff the opportunity to amend his complaint to identify those officers because it found that the facts alleged did not make out an Eighth Amendment claim. The plaintiff apparently did not allege he was in pain, did not require medical assistance, and had no lingering long-term effects. The court held that the plaintiff's injury was only a "modicum of inconvenience," and that the officers' refusal to "temper the use

12

of the flex-cuffs" was not enough to justify a finding of excessive force. In the present case, plaintiff does allege pain and did seek medical assistance. Therefore, the court finds <u>Sands</u> distinguishable.

In the present case, a jury could credit plaintiff's account that his handcuffs were excessively tight and that defendant failed to loosen them. Whether the handcuffs were actually too tight, and whether the officers checked the handcuffs to ensure that they were not too tight, are disputed factual issues that should preclude summary judgment. See <u>Smith v. City of Hemet</u>, 394 F.3d 689, 700-01 (9th Cir. 2005) ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly.")

### IV. Analysis of Qualified Immunity

The legal contours of plaintiff's Eighth Amendment claim for excessive force were clearly established in this circuit in 2015 after <u>Arpin</u> and <u>LaLonde</u>. Defendant should have been aware that ignoring a plaintiff's complaints that he was in pain and pleas to loosen the handcuffs could constitute excessive force, violating the Eighth Amendment. Further, because defendant has not met her burden of demonstrating the absence of a genuine issue of material fact with respect to the extent of plaintiff's injuries or the reasonableness of her response to plaintiff's pleas to loosen the handcuffs, summary judgment based on qualified immunity is inappropriate. See <u>Adickes v. Kress & Co.</u>, 398 U.S. 144, 157 (1970); see also <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993) (if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is not appropriate).

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 43) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 26, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/smit0979.msj